UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DESAREE R., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:24-CV-67-CDL |
| LELAND DUDEK,[1] | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c). For the reasons set forth below, the Court **reverses** the decision of the Commissioner and **remands** the case for further proceedings consistent with this Opinion and Order.

**I.   Standard of Review**

The Social Security Act (the "Act") provides disability insurance benefits to qualifying individuals who have a disability. *See* 42 U.S.C. § 423. The Act defines

---

[1] Leland Dudek is currently the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Dudek is substituted as Defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

"disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261–62).

So long as they are supported by substantial evidence, the agency's factual findings are conclusive. *Biestek*, 587 U.S. at 99; 42 U.S.C. § 405(g). The court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja*, 952 F.3d at 1178 (quoting *Knight*, 756 F.3d at 1175).

II. **Background and Procedural History**

On July 30, 2020, Plaintiff filed applications for disability income benefits and supplemental security income ("SSI"), alleging she had been disabled since April 1, 2017. *See* R. 126. Comprising her claim of disability are a slipped spinal disc, bulging discs,

sciatica, migraines, borderline personality disorder, the need for knee surgery, and obesity. *Id*.

Plaintiff's applications were denied initially on December 23, 2020, R. 216, and upon reconsideration on May 5, 2021. R. 233. After holding a hearing, at which the Plaintiff and a vocational expert testified, an administrative law judge ("ALJ") issued a decision on July 8, 2022 finding that Plaintiff was not disabled. R. 187. The Appeals Council, however, remanded the case to a different ALJ in an order dated January 13, 2023 for failure to consider Plaintiff's SSI claims and for failure to evaluate the medical source opinion of Amelia McConaghy, D.O. R. 198. In the presently appealed decision, the ALJ on remand again denied Plaintiff's claims for disability benefits and SSI on July 27, 2023. R. 23. On January 24, 2024, the Appeals Council denied Plaintiff's request for review, which rendered the ALJ's decision the agency's final decision. R. 1. Plaintiff filed a timely appeal in this Court, which has jurisdiction to review the ALJ's decision under 42 U.S.C. § 405(g).

    **A.**    **The ALJ's Decision**

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v) (2023). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th

Cir. 1988) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987)); *see* 20 C.F.R. § 404.1520(d) (2023); 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (2023) (the "Listings"). At step four, the claimant must show that his impairment or combination of impairments prevents him from performing his previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant has the residual functional capacity ("RFC") to perform other work available in the national economy, considering the claimant's age, education, and work experience. *Id*.

Here, at step one the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2017, and that Plaintiff has not performed substantial gainful activity since her alleged onset date of April 1, 2017. R. 13. At step two, the ALJ determined that Plaintiff has severe impairments, including obesity, degenerative disc disease, bilateral knee osteoarthritis, and migraines. *Id*. The ALJ found that Plaintiff's carpal tunnel syndrome, prediabetes, bipolar disorder, anxiety disorder, post-traumatic stress disorder, and intermittent explosive disorder were not severe impairments. *Id*. In considering mental impairments, the ALJ addressed the "paragraph B" criteria, the four areas of mental functioning used to gauge a mental impairment's severity. *Id*. at 13–14; *see* 20 C.F.R. Pt. 404, Subpt. P, App'x 1. The ALJ found that Plaintiff has a moderate limitation in each of the "paragraph B" domains—understanding, remembering, or applying

information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. R. 14.

At step three, the ALJ determined that plaintiff's impairments do not meet or equal the severity criteria for any Listing, specifically addressing Listings for musculoskeletal disorders listed at 1.15–1.18, as well as determining Plaintiff's migraines do not equal a seizure disorder under 11.02. R. 14–15. The ALJ also found that the functional limitations of Plaintiff's obesity did not alone or in combination with other impairments equal any Listing. *Id*.

At step four, after considering the entire record, the ALJ determined that Plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following qualifications: the claimant can lift no more than 20 pounds occasionally and 10 pounds frequently. She can sit, stand, or walk 6 hours in an 8-hour day. She can occasionally climb ramps, stairs, balance, stoop, kneel, crouch, crawl, but cannot climb ladders, ropes, scaffolding or be exposed to unprotected heights. She can occasionally operate pedals and foot controls. The claimant can frequently grasp, handle, and perform fine motor manipulation. She is limited to simple and detailed but no complex tasks. She can perform work that is repetitive, routine, and rote. She can have occasional contact with coworkers, supervisors, and the general public. She cannot perform work with strict production standards such as fast paced and/or team assembly line work or meat processing type of work. However, she can remain on task and attentive to duties for 2 hours before needing a 15-minute break.

R. 15. The ALJ indicated that, in making this finding, he considered all of Plaintiff's symptoms in connection with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p, as well as medical

opinions and prior administrative findings, in accordance with the requirements of 20 C.F.R. §§ 404.1520c and 416.920c. R. 15–16.

The ALJ found at step four that Plaintiff is unable to perform any past relevant work. *Id*. at 21. At step five, based on the vocational expert's testimony as to a hypothetical person with plaintiff's age, education, and RFC, the ALJ found Plaintiff can perform the requirements of representative occupations including:

> Price Tagger, which is unskilled, light work with an SVP of 2; the DOT Code No. is 209.587-034, and there are approximately 100,000 jobs available in the national economy;
>
> Laundry Press Operator, which is unskilled, light work with an SVP of 2; the DOT Code No. is 363.685-026, and there are approximately 95,000 jobs available in the national economy;
>
> Office Cleaner, which is unskilled, light work with an SVP of 2; the DOT Code No. is 323.687-014, and there are approximately 250,000 jobs available in the national economy.

*Id*. at 22. Accordingly, the ALJ found plaintiff is not disabled at step five. *Id*.

### B.   Plaintiff's Testimony Concerning Her Symptoms

Plaintiff testified that, in 2017, she injured her back and hips while unloading a truck, for which she received temporary worker's compensation benefits, but no disability or settlement payments. R. 73–74. She had physical therapy for these injuries in 2017 and 2018. R. 78–79. She also testified to "other injuries" that stem from the back injury. She received carpal tunnel surgery for her wrists in 2020 and a revision in 2021, although she claims to have had problems with her wrists since 2015. R. 81. She had surgery on her back in 2021, which she believes made her symptoms worse. R. 45. She had surgery on

her right knee in 2022, but has not yet had left knee surgery due to insurance problems. R. 48.

Plaintiff also stated that she has migraines two or three times a week, with the longest lasting for three days. R. 53–54. She experiences a throbbing or sharp pain from her migraines, accompanied by flashing lights, spots floating, rushing water, and humming. R. 54. Plaintiff also feels sharp, stabbing, and sometimes dull, numbing pain in her low back. R. 46. The pain can travel down her side and down her legs, and she feels pain in her knees and from her sciatic nerve damage. *Id*. Plaintiff's knee pain makes her feel at constant threat of falling and so she now uses a cane. R. 49.

Plaintiff testified that she lives with her spouse, who assists her in bathing and preparing her meals. R. 86, 93–94. She has difficulty bathing due to her knee injuries, which make it hard for her to remain standing and to reach parts of herself to clean, and so she uses a shower chair. R. 50. She has difficulty doing chores around the house as she requires frequent breaks to lie down. R. 52. She testified that she lies down for about 85 percent of the day. R. 47. She may grocery shop with her wife, but generally only as a passenger in a reclined position, for trips less than thirty minutes, and often using the electronic scooters available to customers. R. 95–96. After these trips, she will only carry in light grocery items, if anything. *Id*.

C.     **Medical Evidence**

Magnetic Resonance Imaging (MRI) revealed issues with Plaintiff's lumbar spine in 2017, R. 847–48. In a September 2018 appointment, Dr. McConaghy reported Plaintiff's back pain as "painful and very tight. The severity is 9/10. . . . The pain is pulsating and

7

radiates up to her neck and shoulders and down to her feet. The pain never goes away. . . . Sometimes she [cannot] feel her feet due to the pain." R. 1246. After years of suffering pain, she had spinal surgery on August 3, 2021. R. 2095–98. In December of that year, surgeon Randall L. Hendricks M.D. noted Plaintiff was "quite pleased with the results of her spinal surgery" and that he was "extremely pleased" as well. R. 1933. In a May 2022 visit, Dr. Hendricks reported that Plaintiff told him her back "does not hurt much anymore," R. 2156, and he determined that she had "limited range of lumbar motion." R. 2157. As to Plaintiff's cervical spine, when she presented with "chronic neck pain with bilateral upper extremity radiculopathy," a March 2020 MRI of Plaintiff's cervical spine indicated "degenerative spondolysis." R. 1605. She further complained of neck pain in a March 2021 office visit. R. 1768.

Plaintiff first reported pain in her left knee in 2018. R. 1181. A November 2019 X-Ray demonstrated "tricompartmental osteoarthritis with large marginal spurs in all three compartments" in both of Plaintiff's knees. R. 1857. In August 2022, Plaintiff underwent total replacement of her right knee. R. 2235–36. That September, PT Stephen Earle noted Plaintiff no longer required her cane to walk, but still had a slight limp. R. 2207. In November, Justin Tomlinson, P.A., reported that Plaintiff was doing "very well" and "ambulating without discomfort including climbing stairs." R. 2228. A May 2023 examination noted her gait as "Normal/Appropriate." R. 2132.

On August 14, 2017, Andrew Crow, D.O., recorded that Plaintiff stated her migraines began over a year earlier and that "the problem occurs daily" with pain "at a severity of 10/10," R. 1030. Plaintiff was prescribed meloxicam 7.5mg tablets, which were

also intended to treat her low back pain. R. 1023. At an October 2018 appointment with Dr. McConaghy, Plaintiff "noted a migraine of four days duration that is located from ear to ear that runs over the forehead with a 8/10 severity of a sharp and throbbing pain." R. 1275. In April of 2022, Plaintiff was prescribed Atenolol for migraine pain management, and APRN Libby McCorkle noted Plaintiff reported having 4–6 migraine headache days per month. R. 2058.

In his decision, the ALJ found partially persuasive the administrative medical findings of the medical examiners at the initial and reconsideration stages of Plaintiff's claim. He notes that they are

> somewhat consistent with the evidence as a whole, namely recent findings of only of limited range of motion in the lumbar spine and right knee, observations of normal gait after right knee replacement, lack of treatment for the lumbar spine since the last right L3-4 facet joint injection with synovial cyst aspiration in August 2022, stable findings during the last right knee examination, and lack of treatment for the left knee.

R. 19 (citations omitted). He then went on to point out that evidence of Plaintiffs left knee osteoarthritis, Spurling's sign, and obesity all support the limitations in the RFC. *Id*.

The ALJ found 2018 and 2019 medical opinions by Dr. McConaghy to be unpersuasive. R. 20. He noted that the earlier opinion is over five years old, and emphasized that they both predated Plaintiff's 2021 lumbar surgery and 2022 right knee replacement. *Id*. The ALJ further discounted Dr. McConaghy's opinions to the extent they discuss Plaintiff's mental impairments on her ability to work, as Dr. McConaghy did not provide mental healthcare. *Id*.

**III.    Discussion**

Plaintiff challenges the ALJ decision on two grounds. She contends that the ALJ had a duty to further develop the record before finding her migraines do not medically equal a Listing. Plaintiff further contends that the ALJ improperly discounted medical opinions from Dr. McConaghy in that the ALJ failed to discuss their consistency and supportability for the entire alleged disability period and lacked any legally sufficient reason to reject those opinions.

**A.    The ALJ did not properly consider Dr. McConaghy's opinions.**

In her opening brief, Plaintiff challenges the ALJ's treatment of the medical opinions of Dr. Amelia McConaghy, contending that

> the ALJ committed a reversible error in evaluating the medical opinions of Dr. Amelia McConaghy. First, the ALJ failed to adequately evaluate and discuss "supportability" and "consistency" of these medical opinions in accordance with 20 C.F.R. § 404.1520c. Second, the ALJ erred by failing to provide a legally sufficient reason for rejecting these medical opinions.

(Doc. 16 at 19).

Plaintiff first contends that the ALJ failed to adequately evaluate and discuss the "supportability" and "consistency" of Dr. McConaghy's medical opinions with respect to Plaintiff's functional limitations before her August 2021 surgery. Plaintiff specifically refers to Dr. McConaghy's opinions that Plaintiff's pain "would result in her missing 4 days of work per month" and that "Plaintiff would be able to sit less than 2 hours per day and stand less than two hours per 8-hour workday." (Doc. 16 at 19). The ALJ found Dr. McConaghy's opinions unpersuasive due to their age and occurrence prior to Plaintiff's corrective surgeries that resulted in medical improvement. R. 20. Plaintiff claims that the

10

ALJ "seemingly discounted the Plaintiff's functioning from her onset date of April 1, 2017 through August 2021," and that "[i]f medical improvement occurred, the ALJ must consider a closed period of disability." (Doc. 16 at 19).

"In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." *Sheperd v. Apfel*, 184 F.3d 1196, 1199 n. 2 (10th Cir. 1999) (quoting *Pickett v. Bowen,* 833 F.2d 288, 289 n. 1 (11th Cir. 1987)). Such a period must have a "definite beginning date and a definite ending date that the adjudicator establishes at the time of adjudication." *Wallace v. Kijakazi*, No. CIV-22-36-C, 2022 WL 10758160, at *3 (W.D. Okla. September 29, 2022) (quoting the Social Security Administration's Programs Operations Manual System (POMS) DI 25510.001(A)). The ALJ did address some evidence relevant to the alleged closed period. Specifically, the ALJ found the administrative medical findings of the medical examiners at the initial level and at reconsideration, much of which occurred prior to Plaintiff's corrective surgeries, to be "partially persuasive," "supported by the evidence cited," and "somewhat consistent with the evidence as a whole." R. 19. The ALJ did not specify which examiners' opinions from which dates he found persuasive.

The ALJ's reasons for discounting Dr. McConaghy's medical opinions centered on Plaintiff's improved functioning after her corrective surgeries. In his decision, the ALJ stated that Dr. McConaghy's opinion is inconsistent with "improvement in the claimant's low back symptoms after her spinal surgery. . . no observations of antalgic gait since her right knee was replaced . . . [and] stable findings during the last right knee examination."

11

R. 20. However, the ALJ did not articulate how any medical opinion or other medical evidence in the record is inconsistent with Dr. McConaghy's opinions on Plaintiff's functioning prior to these corrective surgeries. Thus, the ALJ improperly discounted Dr. McConaghy's medical opinions for Plaintiff's alleged period of disability prior to those surgeries.

The beginning and ending dates for Plaintiff's closed period could be ascertainable as the alleged onset date and the date of either Plaintiff's 2021 or 2022 corrective surgery. Because properly considering Dr. McConaghy's medical opinion might have prompted the ALJ to consider a closed period of disability, it is appropriate to remand so that the ALJ can determine whether Plaintiff was disabled for a period prior to these surgeries. *See C.M. v. Comm'r, Soc. Sec. Admin.*, No. 22-cv-01943, 2024 WL 1346473 (D. Colo. March 29, 2024) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)) (declining to apply harmless error standard where ALJ improperly discounted evidence of limitations to support a closed period of disability).

Plaintiff further argues that the ALJ failed to provide a legally sufficient reason for rejecting Dr. McConaghy's opinion that Plaintiff is capable of tolerating only low to moderate stress, "depending on the level of pain." (Doc. 16 at 19). Her argument on this point is constrained to a possible mistake the ALJ made in characterizing Dr. McConaghy's 2018 opinion, contained in this excerpt of the decision:

> Further, Dr. McConaghy offered, in part, an opinion as to the effect the claimant's mental impairments had on her ability to work. As Dr. McConaghy did not provide mental health care, that portion of her opinion is neither supported by her treatment records nor consistent with the evidence

12

> recited in Section 3 or the claimant's lack of testimony as to any mental health symptoms during her testimony.

R. 20. Notably, the ALJ does not clarify which portion of Dr. McConaghy's opinions he is mentioning. As Plaintiff argues, he may likely be considering the part of Dr. McConaghy's opinion wherein she indicated that, "[d]epending on [the] level of pain, [the patient is] able to handle low to moderate stress." R. 1379. Plaintiff argues, and is likely correct, that this is more readily characterized as an assessment of Plaintiff's physical impairments—the physical pain she experiences as a result of those impairments—than an assessment of her mental impairments. (Doc. 16 at 21–22). The only mental impairments Dr. McConaghy addressed in her opinion are "bipolar disorder" and "borderline personality disorder," and she only identified those conditions as "psychological conditions affecting [her] patient's physical condition," appending the note "see OSU Psych." R. 1379. Plaintiff contends this alleged mischaracterization "is not harmless. If the ALJ found Dr. McConaghy's opinion even partially persuasive, the ALJ would have assigned Plaintiff a more restrictive RFC, which in turn would have resulted in different findings at step four and five." (Doc. 16 at 22). Upon remand, the ALJ shall further explain his analysis of Dr. McConaghy's opinion statement regarding stress level depending on pain level.

### B. Determining Medical Equivalence to a Listing

Plaintiff also contends that the ALJ had a duty to further develop the record before finding her migraines do not medically equal Listing 11.02. In his decision, the ALJ found that

> Primary headache disorder is not a listed impairment in the Listings. However, under SSR 19-4p a primary headache disorder can be found to

medically equal a listing, individually or in combination, specifically considering Listing 11.02. However, there was no medical expert evidence obtained at the hearing to support the medical equivalence finding as required by SSR 17-2p.

R. 15. Plaintiff premises her argument on that last sentence, claiming that the ALJ, identifying no evidence to support the listing, had a duty to supply it. (Doc. 16 at 10). Plaintiff correctly points out that, as per the Social Security Administration's Hearings, Appeals, and Litigation Law Manual (HALLEX) § I-2-5-34(A), an ALJ must obtain a medical expert opinion when considering finding that a claimant's impairment does not meet, but instead equals, a Listing. (Doc. 16 at 10). However, this requirement is not two-sided:

> If an adjudicator at the hearings or [Appeals Council] level believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, we do not require the adjudicator to obtain [medical expert] evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment.

SSR 17-2p. It is not per se reversible error for an ALJ to determine that a claimant's impairment does not equal a listing in the absence of an expert opinion on medical equivalence. *See, e.g., Welch v. Colvin*, No. 15-cv-00517, 2016 WL 106871, at *6 (D. Colo. January 11, 2016) ("If the ALJ had . . . actually considered a finding that Plaintiff's impairments met or medically equaled a medical listing, then the ALJ would have been required by HALLEX I-2-5-34(B) to obtain the opinion of a medical expert.").

The ALJ provided the following reasoning as to how medical evidence in the record is not wholly consistent with Plaintiff's testimony regarding her migraines' intensity, persistence, and limiting effects:

> The claimant has been treated with medications to ameliorate migraines throughout the record, but her most recent medication adjustments are now over a year old. While the claimant testified to migraines 2–3 times per *week* on average, she told her PCP at the last appointment where migraines were addressed that she experienced 4–6 migraine headache days per *month*. There is no recent treatment in the Emergency Room (ER) or hospital for any uncontrollable, intractable migraine headache, which points to the efficacy of her PCP-prescribed medication. Both the physical and psychological effects of migraines, in combination with the psychological effects of chronic pain—which can affect the claimant's ability to think, concentrate, and interact with others, for example—support the mental limitations in her residual functional capacity.

R. 19 (citations omitted).

Plaintiff cites numerous pages of the medical record to indicate that she reported migraines accompanied by dizziness, light-headedness, nausea, phonophobia, and photophobia. (Doc. 16 at 13-14). She asserts that the evidence supports her claim to equal a listing in frequency, severity, and symptoms and that the ALJ was required to develop the record before making the determination.

Because this case is remanded for proper consideration of Dr. McConaghy's opinions, the Court finds it also appropriate for the Commissioner to consider the other issues raised by the Plaintiff on appeal as to record development and whether her migraines medically equal a listing. If the Commissioner finds that record development is unnecessary to the determination, that decision not to develop the record should be explained. If the record is further developed, such additional record shall be considered and explained in determining whether or not the migraines equal Listing 11.02.

## IV. Conclusion

For the reasons set forth above, the Court finds the ALJ's decision is not consistent with the applicable legal standards. Therefore, the decision of the Commissioner finding Plaintiff not disabled for the relevant period is **reversed and remanded** for further proceedings consistent with this opinion.

IT IS SO ORDERED this 31st day of March, 2025.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge